UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
__WHEELING__ DIVISION

ELECTRONICALLY
FILED
Dec 03 2021
U.S. DISTRICT COURT
Northern District of WV

| | |
|---|---|
| LASTEPHEN ROGERS, Individually and for Others Similarly Situated,<br><br>v.<br><br>TUG HILL OPERATING, LLC | Case No.  **5:21-CV-199 (Bailey)**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Lastephen Rogers (Rogers) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) against Defendant Tug Hill Operating, LLC (Tug Hill).

2. Rogers and the other workers like him regularly worked for Tug Hill over 40 hours each week.

3. But these workers never received overtime compensation.

4. Instead of paying overtime as required by the FLSA, Rogers and the other Tug Hill company men were paid a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7. Rogers worked for Tug Hill in Marshall and Wetzel Counties, in this District and Division.

## THE PARTIES

8. Rogers performed work for Tug Hill as a company man from approximately January 2019 to July 2020. Throughout his tenure, he was paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as **Exhibit A**.

9. Rogers brings this action on behalf of himself and all other similarly situated workers paid by Tug Hill's day-rate system. Each of these company men (also known as drilling and completions consultants) were paid a flat amount for each day worked for Tug Hill with no overtime for hours they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class of similarly situated workers consists of:

> **All company men employed by or performing work on behalf of Tug Hill classified as independent contractors and paid a day-rate without overtime during the past three years** (the "Day Rate Workers").

10. Tug Hill is a Texas company and may be served with process by serving its registered agent: CTC, 1627 Quarrier St., Charleston, WV, 25311-2124.

## COVERAGE UNDER THE FLSA

11. For at least the past three years, Tug Hill has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. For at least the past three years, Tug Hill has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. For at least the past three years, Tug Hill has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said

enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

14. For at least the past three years, Rogers and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

15. Tug Hill treated Rogers and all its company men that it classified as independent contractors as employees and uniformly dictated the pay practices to which Rogers and the Day Rate Workers were subjected.

16. Tug Hill's classification of Rogers as an independent contractor does not alter its status as an employer under the FLSA.

## FACTS

17. Tug Hill is an oil and natural gas exploration and production company operating in the Appalachia basin in West Virginia and in South Texas.

18. In order to provide services to many of its customers, Tug Hill contracts with certain companies to provide it with personnel to perform the necessary work.

19. Tug Hill hires company men to perform work which is an integral and indispensable part of its business objectives.

20. Over the past three years, Tug Hill employed dozens of oilfield workers – including Rogers – as company men in West Virginia and Texas.

21. These workers are subjected to the same or similar illegal pay practices for the same work. Specifically, the Day Rate Workers were paid a day-rate while performing drilling and completions work on behalf of Tug Hill, regardless of the number of hours that they worked that day (or in that workweek) without overtime pay.

22. For example, Rogers worked for Tug Hill starting in approximately January 2019 through July 2020 in Marshall and Wetzel County, West Virginia.

23. Throughout his tenure, he was paid on a day-rate basis.

24. As a company man, Ford's primary job duties required him to oversee the rig site and make sure the operations were being performed in accordance with Tug Hill's procedures and instructions.

25. Rogers regularly worked in excess of 40 hours each week while employed by Tug Hill.

26. Rogers typically worked more than 80 hours a week.

27. The work Rogers performed was an essential part of Tug Hill's core business.

28. During Roger's employment with Tug Hill, he was classified as an independent contractor, however, Tug Hill exercised control over all aspects of his job.

29. Tug Hill did not require any substantial investment by Rogers for him to perform the work required of him.

30. Tug Hill determined Rogers' opportunity for profit and loss.

31. Indeed, Tug Hill controlled all the significant or meaningful aspects of the job duties performed by Rogers.

32. Tug Hill dictated the hours and locations Rogers worked, tools used, and rates of pay received.

33. Tug Hill controlled all aspects of Rogers' job activities by enforcing mandatory compliance with Tug Hill's policies and procedures.

34. No real investment was required of Rogers to perform his job.

35. Rogers worked on Tug Hill's job location, Tug Hill and its superintendents controlled the job site and the operations taking place.

36. Rogers did not provide the equipment he worked with on a daily basis.

37. Tug Hill made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Rogers worked.

38. Rogers did not incur operating expenses like rent, payroll, and marketing.

39. Rogers was economically dependent on Tug Hill during his employment.

40. Tug Hill set Rogers' rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Tug Hill.

41. Tug Hill directly determined Rogers' opportunity for profit and loss. Rogers' earning opportunity was based on the number of days Tug Hill scheduled him to work.

42. The daily and weekly activities of Rogers and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Tug Hill.

43. Virtually every job function was pre-determined by Tug Hill, including the forms to use at a job site, the reports to compile, the schedule of work, and safety guidelines to follow.

44. Rogers and the Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters.

45. Rogers and the Day Rate Workers did not have any supervisory or management duties.

46. For the purposes of an FLSA overtime claim, Rogers and the Day Rate Workers performed substantially job duties related to servicing oil and gas operations on Tug Hill's sites.

47. Rogers and the Day Rate Workers were not employed by Tug Hill on a project-by-project basis.

48. In fact, while Rogers was classified as an independent contractor, he was regularly on call for Tug Hill and was expected to drop everything and work whenever needed.

49. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for 2 or more weeks at a time.

50. Instead of paying them overtime, Tug Hill paid Rogers and the Day Rate Workers a day-rate. Tug Hill denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

51. Tug Hill's policy of failing to pay its company men misclassified as independent contractors, including Rogers, overtime violates the FLSA because these workers are, for all purposes, employees.

52. Rogers and the Day Rate Workers were not guaranteed a salary under the FLSA. *See Hewitt v. Helix Energy Sols. Grp., Inc.,* No. 19-20023, 2021 WL 4099598, at *3 (5th Cir. Sept. 9, 2021).

53. Since Rogers and the Day Rate Workers were not guaranteed a salary, they were non-exempt employees who are owed unpaid overtime.

54. Because Rogers (and Tug Hill's other company men) was misclassified as an independent contractor by Tug Hill, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

55. Despite knowing the FLSA's requirements, Tug Hill failed to pay Rogers and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

56. Rogers incorporates the preceding paragraphs by reference.

57. As set forth herein, Tug Hill violated the FLSA by failing to pay Rogers and the Day Rate Workers overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

58. Tug Hill knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. Tug Hill's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

59. Accordingly, Rogers and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

## COLLECTIVE ACTION ALLEGATIONS

60. Rogers incorporates all previous paragraphs and alleges that the illegal pay practices Tug Hill imposed on them were likewise imposed on the Day Rate Workers.

61. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

62. Numerous other individuals who worked with Rogers were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

63. Based on his experiences and tenure with Tug Hill, Rogers is aware that Tug Hill's illegal practices were imposed on the Day Rate Workers.

64. Tug Hill used the Day Rate Workers across the United States.

65. The Day Rate Workers were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

66. Tug Hill is the true employer of Rogers and the Day Rate Workers.

67. Tug Hill's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

68. Rogers' experiences are therefore typical of the experiences of the Day Rate Workers.

69. The narrowed job titles or precise job locations of the various Day Rate Workers do not support collective treatment.

70. Rogers has no interests contrary to, or in conflict with, the Day Rate Workers. Like

each Day Rate Worker, Rogers has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

71. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

72. Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and Tug Hill will reap the unjust benefits of violating the FLSA.

73. Furthermore, even if some of the members of the class could afford individual litigation against Tug Hill, it would be unduly burdensome to the judicial system.

74. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Day Rate Workers and provide for judicial consistency.

75. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

  (a) Whether Tug Hill employed Rogers and the Day Rate Workers within the meaning of the FLSA;

  (b) Whether Rogers and the Day Rate Workers were improperly misclassified as independent contractors;

  (c) Whether Tug Hill's decision to classify Rogers and the Day Rate Workers as independent contractors was made in good faith;

  (d) Whether Tug Hill's decision to not pay time and a half for overtime to Rogers and the Day Rate Workers was made in good faith;

  (e) Whether Tug Hill's violations of the FLSA was willful; and

  (f) Whether Tug Hill's illegal pay practices were applied uniformly across the nation to all Day Rate Workers.

76. Rogers claims are typical of the claims of the Day Rate Workers. Rogers and the Day Rate Workers sustained damages arising out of Tug Hill's illegal and uniform employment policy.

77. Rogers knows of no difficulty that will be encountered in the management of this

litigation that would preclude their ability to go forward as a collective action.

78. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

79. Rogers demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Rogers pray for judgment against Tug Hill as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the Day Rate Workers;

(b) For an order pursuant to section 16(b) of the FLSA finding Tug Hill liable for unpaid back wages, and an equal amount of liquidated damages, due to Rogers and the Day Rate Workers;

(c) For an order awarding Rogers and the Day Rate Workers the costs of this action;

(d) For an order awarding Rogers and the Day Rate Workers their attorneys' fees;

(e) For an order awarding Rogers and the Day Rate Workers unpaid benefits and compensation in connection with the FLSA violations;

(f) For an order awarding Rogers and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(g) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Anthony J. Majestro
    **Anthony J. Majestro (WVSB 5165)**
    **James S. Nelson (WVSB 10776)**
    **POWELL & MAJESTRO PLLC**
    405 Capitol Street, Suite P-1200
    Charleston, WV 25301
    304-346-2889 – Telephone
    304-346-2895 – Facsimile

**AND**

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**