**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**LASTEPHEN ROGERS**, Individually
and for Others Similarly Situated,

                    Plaintiff,

          v.                                        **Civil Action No. 5:21-CV-199**
                                                    Judge Bailey

**TUG HILL OPERATING, LLC**,

                    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO INTERVENE AND GRANTING MOTION TO DISMISS

Pending before this Court is a Motion to Intervene [Doc. 15] filed by RUSCO Operating, LLC on January 27, 2022.  Following a deadline extension, Defendant Tug Hill Operating, LLC filed a Response to Motion to Intervene [Doc. 23] on February 24, 2022.  That same day, plaintiff filed a Memorandum in Opposition to Motion to Intervene [Doc. 24].  On March 10, 2022, RUSCO Operating, LLC filed a Reply [Doc. 30].

Additionally, pending before this Court is defendant Tug Hill Operating, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), and (7) [Doc. 21] and accompanying Memorandum in Support [Doc. 22], filed on February 24, 2022.  Following a deadline extension, plaintiff filed a Response in Opposition [Doc. 31] on March 17, 2022.  Defendant Tug Hill Operating, LLC filed a Reply [Doc. 32] on March 24, 2022.

1

Based on the extensive briefing on both Motions, each is ripe for adjudication.  For the reasons contained herein, the Motion to Intervene will be granted, and the Motion to Dismiss will be granted.

## BACKGROUND

Plaintiff Lastephen Rogers ("plaintiff") filed his complaint [Doc. 1] on December 3, 2021, seeking to recover alleged unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against defendant Tug Hill Operating, LLC ("defendant Tug Hill"). [Id. at ¶ 1].  Plaintiff brings this action on behalf of himself and all other similarly situated workers paid by defendant Tug Hill's day-rate system.  [Id. at ¶ 9].

According to plaintiff, defendant Tug Hill operates an oil and natural gas exploration and production company operating in West Virginia and Texas. [Id. at 17].  Plaintiff contends that while working for defendant Tug Hill as a drilling and completions consultant, he, along with similarly situated workers, was paid a flat amount for each day worked with no overtime for hours worked in excess of 40 hours in a workweek in violation of the FLSA.  [Id. at 9–13].

Non-party RUSCO Operating, LLC ("RUSCO") operates an online platform ("the application" or "the app"), which is used by oil and gas operators and independent contractors who provide freelance services for those operators.  [Doc. 15-1 at 1–2].  According to RUSCO, its app is used to facilitate and connect independent contractors to particular projects run by oil and gas operators nationwide.  [Id.].  Beyond the matchmaking function between operators and independent contractors, RUSCO's app also provides independent contractors with administrative functions like payment, insurance, and record-keeping. [Id. at 4].  After a contractor, like plaintiff, performs work, RUSCO then pays the contractor in

accordance with an invoice submitted by the contractor, less a percentage known as the "split" that compensates RUSCO for its service. [Id.]. Operators like defendant then pay RUSCO the balance invoiced. [Id.].

Underlying the foregoing relationship between plaintiff and RUSCO is an independent contractor agreement, which states that the agreement between RUSCO and plaintiff "constitutes a binding agreement between you, an independent professional . . . and [RUSCO] . . . governing your use of the Service . . . to provide freelance services to third party companies." *See* [Doc. 15-4]. Throughout the independent contractor agreement, plaintiff confers several benefits on defendant and RUSCO, including:

- Rights regarding the work to be performed: "You and [Tug Hill] solely negotiate and determine (x) when and where you perform Projects, (y) what you wear while performing projects, and (z) any additional bonuses or gratuities arising out of such Projects."

- Waiver of workers compensation: "As an independent professional, you are assuming the responsibilities of an employer for the purpose of a Project, and you hereby affirm you are not entitled to, and are hereby waiving, any claim for workers compensation benefits under either [RUSCO]'s or [Tug Hill's] workers' compensation insurance policy."

- Confidentiality: "You must keep [RUSCO]'s confidential information absolutely confidential, except as required or provided by law, including but not limited to information about other [Tug Hill] Projects . . ."

[Id.].   Plaintiff also agreed to abide by certain terms of service, which contain a dispute resolution provision; importantly, RUSCO's dispute resolution provision reads as follows:

> Generally, in the interest of resolving disputes between you and [RUSCO] in the most expedient and cost effective manner, you and [RUSCO] agree that every dispute arising in connection with these Terms will be resolved by binding arbitration. . . . This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms.  YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND [RUSCO] ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

[Doc. 15-6].  Further, the terms state that claims will be administered by and in accordance with the Rules of the American Arbitration Association, and that "[t]he arbitrator [shall have] exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement."  [Id.].

## **LEGAL STANDARDS**

### I.    **Intervention**

"The Fourth Circuit favors 'liberal intervention' and preventing the 'problem of absent interested parties.'"  *Deutsche Bank v. Mountain West Hospitality, LLC*, 2017 WL 6420280, at *2 (N.D. W.Va. Dec. 15, 2017) (Keeley, J.) (citing *Friend v. REMAC Am., Inc.*, 2014 WL 2440438, at *1 (N.D. W.Va. May 30, 2014) (Groh, J.) (quoting *Feller v. Brock*, 802

F.3d 722, 729 (4th Cir. 1986))).  "Prospective intervenors bear the burden of demonstrating their right to intervene." *Deutsche Bank*, 2017 WL 6420280, at *2 (citing *In re Monitronics Int'l, Inc.*, 2015 WL 12748330, at *1 (N.D. W.Va. June 3, 2015) (Keeley, J.) (citing *Richman v. First Woman's Bank*, 104 F.3d 654, 658 (4th Cir. 1997))).  Under Fed. R. Civ. Pro. 24, this Court has discretion to allow intervention either as a matter of right or on a permissive basis.  *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013).

## A.      Intervention by Right

In the Fourth Circuit, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller*, 802 F.2d at 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

This Court must grant a timely motion to intervene if the movant "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests, unless existing parties adequately represent that interest." Fed. R. Civ. Pro. 24(a).  The Fourth Circuit recognizes that, to intervene as a matter of right, the movant must satisfy four requirements:

> (1) the application must be timely; (2) the applicant must have an interest in the subject matter sufficient to merit intervention; (3) the denial of intervention would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

5

*Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001).

### 1.    Timeliness

Under either Rule 24(a) or 24(b), the application for intervention must be timely. *See* Fed. R. Civ. Pro. 24(a) & 24(b) (requiring "timely application"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) ("Both intervention of right and permissive intervention require timely application."). Although Rule 24 "requires that the motion to intervene be 'timely,' it does not attempt to define the term or specify rigid time limits." *United States v. South Bend Community Sch. Corp.,* 710 F.2d 394, 396 (7th Cir. 1983); *see Black v. Central Motor Lines Inc.*, 500 F.2d 407, 408 (4th Cir. 1974) (noting that "Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court"). "The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *South Bend*, 710 F.2d at 396. "To determine whether an application for intervention is timely, we examine the following factors: how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould*, 883 F.2d at 286. Where intervention is of right, "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive." *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981).

### 2.    Interest in Subject Matter

A potential intervenor's interest in the subject matter of the litigation must be "a significantly protectable interest." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (citations omitted). An interest is a "significantly protectable interest in an action if [a party]

'stand[s] to gain or lose by the direct legal operation' of a judgment in that action." *Oplaihio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 18 (S.D. W.Va. 2015) (Chambers, C.J.) (quoting *Teague*, 931 F.2d at 261). But "[s]tanding to gain or lose by direct operation of a judgment may not be a necessary condition for an interest to be significantly protectable." *Id.* This Court has observed that "it requires only that [the movant] show that the disposition of the action 'may as a practical matter' impair their interests." *United States v. Exxonmobil Corp.*, 264 F.R.D. 242, 245 (N.D. W.Va. 2010) (Keeley, J.) (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, 738 F.2d 82, 84 (8th Cir. 1984)).

### 3.   Impaired Ability to Protect Interests

Courts in the context of this sort of litigation have recognized that a signatory to an arbitration agreement should have an ability to protect its interests in the enforcement of the agreement warranting intervention as of right. *See, e.g., Nesser v. MAC Acquisitions, LLC*, 2021 WL 2636743, at *4 (N.D. N.C. 2021) (Whitney, J.) ("[T]his Court finds [intervenor] as a contracting party with a significantly protectable interest at risk–the arbitration agreement–should be allowed to intervene to protect said interest."); *Becker v. Delek US Energy, Inc.*, 2020 WL 4604544, at *8 (M.D. Tenn. 2020) (Trauger, J.) (staffing company permitted to intervene based on "its interest in resolving the question of whether the arbitration clause . . . extend[s] to [worker's] claims against [operator]"); *Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *4 (D. N.M. July 15, 2020) ("[S]eeking to vindicate it's A[rbitration] A[greement] with [workers] is a legitimate interest for [staffing company] to protect."); *Altenhofen v. S. Star Central Gas Pipeline, Inc.*, 2020 WL 3547947, at *4 (W.D. Ky. June

30, 2020) (same); *Ferrell v. SemGroup Corp.*, 2020 WL 4281302, at *3 (N.D. Okla. June 12, 2020) (same).

### 4.    Adequacy of Representation by Named Party

A potential intervenor's burden to show that its interests will not adequately be represented by a named party is "'minimal,' and it is enough to show that the representation 'may be' inadequate." *Kane County, Utah v. United States*, 928 F.3d 877, 892 (10th Cir. 2019). "The possibility of divergence need not be great in order to satisfy th[is] burden. An intervenor need only show the *possibility* of inadequate representation. Only when the objective of the applicant for intervention is identical to that of one of the parties is representation considered to be adequate." *Barnes v. Security Life of Denver Ins. Co.*, 945 F.3d 1112, 1124 (10th Cir. 2019).

### B.    Permissive Intervention

Fed. R. Civ. Pro. 24(b)(1) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Although whether to allow permissive intervention is within the sound discretion of the district court, it must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003); Fed. R. Civ. Pro. 24(b)(3).

8

## II.   Motion to Dismiss

### A.   12(b)(1)

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See Materson v. Stokes*, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

### B.   12(b)(6)

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all

of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro,*** 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." ***Twombly***, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." ***Williams v. Branker***, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. ***Id***. at 396–97.

## C.     12(b) and Arbitration

A motion to compel arbitration may be pursued pursuant to Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure. In either instance, courts should apply the dismissal (rather than summary judgment standard) if the challenge is a facial attack to the allegations

of the complaint. *Price v. West Virginia Air National Guard, 130TH Airlift Wing*, 2016 WL 3094010, at *2 (S.D. W.Va. June 1, 2016) (Johnston, J.) (stating that a motion to dismiss under Rule 12(b)(1) can be either facial or factual, with the former challenging whether the allegations of the complaint are facially sufficient to sustain the court's jurisdiction).

Where the challenge is facial, the court must accept the allegations as true and proceed to consider the motion as it would a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* A challenge can be facial and thus subject to the motion to dismiss standard even if the defendants attach the arbitration agreement to their filing. *See Salmons v. CMH of Ky., Inc.*, 2019 WL 3884038 (S.D. W.Va. Aug. 16, 2019) (Copenhaver, J.).

### D.      12(b)(7)

A court may dismiss an action for failure to join a party. *See* Fed. R. Civ. Pro. 12(b)(7) (stating that "a party may assert the following defenses by motion . . . failure to join a party under Rule 19"). The movant bears the burden of demonstrating that dismissal for non-joinder is appropriate.

In analyzing a motion to dismiss under Rule 12(b)(7), courts conduct a two-step inquiry. *See West Virginia Advocates, Inc. v. Mitchell*, 2007 WL 1088850, at *3 (N.D. W.Va. Mar. 30, 2007) (Stamp, J.). First, a court must determine whether a party is necessary within the meaning of Rule 19(a). *Id.* Under Rule 19(a)(1), a party is necessary where:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a

practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If the party is necessary but cannot feasibly be joined, the court proceeds to the second prong of the inquiry, which asks whether the action can continue absent the party, or whether the party is "indispensable" under Rule 19(b). *Id*.

In deciding whether a party is indispensable, the court considers four factors: (1) the extent to which a judgment rendered in the party's absence might prejudice that party or the other parties; (2) the extent to which any prejudice could be ameliorated; (3) whether a judgment rendered in the party's absence would be inadequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. Pro. 19(b). If the absent party is both necessary and indispensable, then the litigation should be dismissed. Fed. R. Civ. P. 12(b)(7).

## DISCUSSION

As noted above, there are two pending Motions, which have been briefed extensively by the parties. Accordingly, this Court will first address the Motion to Intervene before turning to a discussion of the Motion to Dismiss.

## I.     RUSCO's Motion to Intervene

RUSCO argues that plaintiff has improperly excluded it from the pending litigation through selective pleading despite the fact that plaintiff had an actual agreement concerning his independent contractor status with RUSCO. [Doc. 15-1 at 1]. According to RUSCO, plaintiff signed this contract including the aforementioned arbitration agreement in which

plaintiff promised to arbitrate claims like the ones asserted here. [Id.]. RUSCO avers that intervention is warranted as a right because RUSCO's contractual right to arbitration cannot be fully protected if it is absent from this litigation. [Id. at 2]. Absent intervention, RUSCO states that it could potentially be liable to defendant Tug Hill based on the outcome of the case. [Id.]. Alternatively, RUSCO argues it should be granted permissive intervention because the enforcement of its contractual rights share common questions of law and fact raised herein, and an inability to participate in this lawsuit could impair its business model and subject it to liability. [Id.].

Defendant Tug Hill filed a Response to the Motion to Intervene. *See* [Doc. 23]. Therein, defendant Tug Hill joins in RUSCO's request, and further argues that RUSCO *must* be joined in the ongoing litigation based on, *inter alia*, the language of the aforementioned arbitration clause. [Id. at 1–2].

Plaintiff filed a Memorandum in Opposition to Motion to Intervene [Doc. 24] advancing several arguments against RUSCO's intervention[1]. First, plaintiff contends that RUSCO does not have a significantly protectible interest in this lawsuit against defendant Tug Hill. [Id. at 8]. In support of this position, plaintiff asserts that RUSCO's business model is not at issue, its interest in arbitration alone is not significantly protectible, and it cannot be liable for the result of this lawsuit either as a joint employer or a potential indemnitor to defendant Tug Hill. [Id. at 8–14]. Further, plaintiff argues that resolving his claims against defendant Tug Hill will not

---

[1]Plaintiff identifies that RUSCO is a wholly owned subsidiary of Workrise Technologies, Inc. f/k/a RigUp, Inc., and uses the two interchangeably. For the sake of clarity, this Court will identify the entity as "RUSCO."

13

impair or impede RUSCO's alleged interests. [Id. at 16]. Further, plaintiff avers that defendant Tug Hill adequately represents RUSCO's alleged interest in this matter. [Id. at 17]. As a final, alternative argument, plaintiff contends that permissive intervention is also inappropriate. [Id. at 18].

RUSCO filed a Reply in which it reasserts its arguments for both intervention by right and permissive intervention. [Doc. 30].

### A.   RUSCO is entitled to intervention as a matter of right.

Based on consideration of the arguments asserted by the parties, this Court concludes that RUSCO is entitled to intervene in this matter by right.

### 1.   The Motion is timely.

Turning to the first factor under the Fourth Circuit's analysis, the subject Motion is clearly timely. In fact, plaintiff does not assert an argument that the Motion is somehow untimely in his Response. Here, plaintiff filed his original complaint on December 3, 2021. *See* [Doc. 1]. Defendant Tug Hill has not even filed a responsive pleading to the complaint pending the resolution of its Motion to Dismiss. Further, no discovery has taken place, and this Court has yet to issue even an initial scheduling order. Accordingly, there can be no question that RUSCO's motion is timely considering these facts, and it therefore satisfies the first prong to intervene by right.

### 2.   RUSCO's Interest in this Litigation is Significantly Protectible.

RUSCO argues that its interest in this litigation is significantly protectible because it has a legitimate interest in the enforcement of its arbitration agreement with plaintiff. [Doc. 15-1 at 10]. Plaintiff concedes that RUSCO identified at least three interests it seeks

14

to protect by intervening, but plaintiff contends that none of these three interests are "significantly protectible." This Court disagrees.

### a.    The Business Model

First, and as previously mentioned, RUSCO contends that its business model is directly challenged by the potential outcome of this litigation. [Id. at 10–11]. In Response, plaintiff raises virtually identical arguments to those raised in New Mexico litigation involving RUSCO, which were rejected by that Court. *See Martin v. Tap Rock Resources, LLC*, 2022 WL 278874, at *2 (D. N.M. Jan. 31, 2022) (granting RUSCO's motion to intervene and rejecting the same arguments raised by the same plaintiff's counsel here).[2] As the *Martin* court noted, "no matter how Plaintiffs' characterize the situation, they cannot reasonably argue that an adverse decision *would not* adversely impact RUSCO's business model." 2022 WL 278874, at *7. Looking at the economic realities of the case, the *Martin* court recognized the significance of RUSCO's interest and noted "[a] determination against Tap Rock classifying

---

[2]In fact, the *Martin* court noted in footnote 4:
As the Court previously recognized in *Bock v. Salt Creek Midstream LLC*, "there is a growing body of intervention jurisprudence among district courts in similar cases, with the trend decidedly in favor of granting intervention." 2020 WL 3989646, at *7 (D. N.M. July 15, 2020) (same Plaintiff's counsel as instant action) (listing several additional cases with same Plaintiff's counsel), *adopted by* 2020 WL 5640669 (D. N.M. Sept. 22, 2020); *see also Becker v. Delek US Energy, Inc.*, 2020 WL 4604544 (M.D. Tenn. Aug. 11, 2020); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947, at *1 (W.D. Ky. June 30, 2020) (intervention granted to staffing agency that employed plaintiffs pursuant to arbitration agreements, but which was not named in FLSA class action) (plaintiff's counsel included Plaintiffs' counsel in instant action); *Ferrell v. SemGroup Corporation, et al.*, 485 F.Supp.3d 1334 (N.D. Ok. 2020) (same) (counsel again overlap), *overruled on other grounds at* 2021 WL 5576677 (10th Cir. Nov. 30, 2021); *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 2104911, at *1 (W.D. Pa. May 1, 2020) (same) (counsel again overlap); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F.Supp.3d 1168 (D. Wyo. 2020) (same) (counsel again overlap).

Plaintiffs as 'employees' and not 'independent contractors' would turn that same business model on its head and arguably threaten RUSCO's financial security.  From its standpoint, RUSCO has asserted a financial interest worth protecting."  *Id.*

Again, plaintiff makes the same rejected arguments here.  Plaintiff minimizes, but never particularly disputes, the ongoing relationship between himself and RUSCO, which continues after an independent contractor accepts a project.  This is especially critical here, where defendant Tug Hill indicated the possibility of seeking indemnification from RUSCO based on plaintiff's claims.  *See* [Doc. 15-1 at 6].

The only law relied upon by plaintiff in his argument against RUSCO's interest in the litigation is that "Tug Hill has an independent duty, separate and apart from the duty owed by [RUSCO]." [Doc. 24 at 11].  But this contention, while correct, is not relevant to the inquiry on the pending Motion, i.e. whether RUSCO has a significant interest in this dispute.  Though its conclusions are broad, plaintiff's Response fails to demonstrate plaintiff's claims do not impact the contractual relationship between RUSCO and defendant Tug Hill.  In fact, defendant Tug Hill has affirmatively confirmed RUSCO's possible liability based on the alleged failure of RUSCO's representations as to plaintiff's independent contractor status.  *See* [Doc. 22].

As identified by RUSCO, the Fourth Circuit permits intervention where, as here, the prospective intervenor has advocated purely economic interests in ongoing litigation.  *See, e.g., Feller v. Brock*, 802 F.2d 722, 729–30 (4th Cir. 1986) (potential for increased wages was sufficient interest to allow apple pickers intervention of right in case seeking to compel United States Department of Labor to issue permits for foreign workers); *JLS, Inc. v. Public Service Comm'n of West Virginia, et al.*, 321 F.App'x 286, 289–90 (4th Cir. 2009)

(potential for increased competition was sufficient interest to support intervention by motor transport companies in suit to determine proper regulator for the transportation of railroad employees.).

Plaintiff's Response seeks to divert this Court from this conclusion by citing two cases for the proposition that a "vague" or "remote" possibility that an interest may be affected is not sufficient to warrant intervention. *See* [Doc. 24 at 12–13]. First, plaintiff cites *Ohio Valley Env't Coalition v. McCarthy*, 313 F.R.D. 10, 22 (S.D. W.Va. 2015) (Chambers, C.J.). In *McCarthy*, the court denied the West Virginia Coal Association's request to intervene in an environmental advocacy group's litigation against the Environmental Protection Agency because there were "too many steps involving nebulous goals and discretion of EPA and state agency between potential judgment in organizations' favor and any possible adverse consequence to association members' interests in property, coal reserves, or water treatment costs from potentially more stringent effluent limitations on members' national pollution discharge elimination system (NPDES) permits." *Id*. at 20. The *McCarthy* court noted that "[i]n ruling on motions for intervention of rights, courts could not function properly if they were required to find significantly protectable interests based on multiple layers of contingency." *Id.* at 25. This case is inopposite to the subject analysis because there are no layers of contingency here. Both defendant Tug Hill and RUSCO have detailed specific and direct possible consequence they may face as a result of the outcome of litigation.

Plaintiff also cites *Talbot 2002 Underwriting Cap. Ld. v. Old White Charities, Inc.* 2015 WL 6680892 (S.D. W.Va. Oct. 30, 2015) (Berger, J.) for the proposition that RUSCO's interest is too vague. [Doc. 24 at 13]. This Court is not persuaded by plaintiff's argument

17

based on *Talbot*, where Judge Berger *granted intervention* by finding the economic interest asserted sufficient for purposes of intervention by right. More specifically, the *Talbot* court found that "if the Plaintiff succeeds in obtaining a declaratory judgment, [intervenor] will face a greater likelihood of claims for indemnification, and findings of the Court in this case may limit the ability of [intervenor] to defend such claims." *Id.*, at *2.

### b.   Arbitration

In addition to the possible effects on its business model, RUSCO argues, throughout its briefing, that its interest in arbitration constitutes a significantly protectible interest. *See* [Doc. 15-1]. In Response, plaintiff contends that arbitration alone is not a significantly protectible interest and relies on a variety of cases in support. [Doc. 24 at 13–16]. This Court is not persuaded by plaintiff's argument in this regard.

Initially, and as previously discussed, arbitration is but one of RUSCO's asserted interests in this case. Next, as noted in the "Legal Standards" section of this Order, various courts in this context have found that seeking to enforce an arbitration agreement constitutes a significantly protectible interest thereby warranting intervention.

Further, this Court finds the legal support offered by plaintiff to deviate from the aforementioned opinions to be unpersuasive. First, plaintiff cites to *Field v. Andarko Petro. Corp.*, 2022 WL 203256 (S.D. Tex. Jan. 24, 2022) against intervention. There, the Court ultimately denied RUSCO's motion to intervene; however, the decision in *Field* was based on circumstances different from the case at bar, because

[RUSCO did] not argue that it faces potential liability under either a joint-employer theory or an agreement to indemnify Anadarko. *Hinkle v. Phillips*

*66 Co.*, No. PE:20-CV-00022-DC-DF, 2020 WL 10352346, at (4 (W.D. Tex.

Nov. 13, 2020) (granting intervention as a of right under similar circumstances

because, *inter alia*, "the specter of joint and several liability hanging over" the

intervenor's relationship with the defendant warranted a "place at the table

because any liability assessed to Defendant may have a direct impact on

intervenor)."

*Field*, at *4. The situation here is exactly opposite, where defendant Tug Hill has demanded indemnity fro RUSCO, thus making the potential for RUSCO's liability clear.

Similarly, plaintiff cites *Hiser v. Nzone Guidance, LLC*, 799 F.App'x 247 (5th Cir. 2020) in support of its argument against intervention based on arbitration. [Doc 24 at 8]. However, in *Hiser*, RUSCO did not attempt to intervene; rather, RUSCO's customer attempted to enforce the arbitration agreement as a third-party beneficiary. *Id.* at 248. Here, RUSCO is seeking to intervene and enforce its own agreement. As *Hiser* demonstrates, intervention is a proper avenue for RUSCO to protect its interest in arbitration.

### c. Liability

Plaintiff argues that RUSCO cannot intervene on the basis that it might be liable as his joint employer. [Doc. 24 at 16]. However, defendant Tug Hill's demand for indemnity provides RUSCO an interest in this litigation sufficient to intervene. *See Ferrell v. SemGroup Corp.*, 2020 WL 4281302, at *4 (N.D. Okla. June 12, 2020) (granting intervention as of right; "[Intervenor's] potential obligation constitutes a direct financial interest in this litigation, which may be impaired if [intervenor] is not permitted to intervene and defend itself"); *Altenhofen v. Southern Star Cent. Gas Pipeline, Inc.*, 2020 WL 3547947, at *4 (W.D. Ky. June 30,

19

2020) (granting intervention as of right; "Courts agree that an intervenor has a sufficient interest in the litigation where it may be required to indemnify a customer"); ***Bock v. Salt Creek Midstream LLC***, 2020 WL 3989646 (D. N.M. July 15, 2020) (granting intervention as of right; "[B]ecause of the specter of potential indemnification . . . this Court finds that [intervenor] has a sufficiently direct economic interest in this case and impairment of its interest is possible if intervention is denied"); ***Becker v. Delek US Energy***, 2020 WL 4604544, at *10 (M.D. Tenn. Aug. 11, 2020) (granting intervention as of right; find an indemnity demand "amplified" the propriety of intervention); ***Hinkle v. Phillips 66 Co.***, 2020 WL 10352346, at *4 (W.D. Tex. Nov. 13, 2020) (granting intervention as of right and holding "the undersigned finds [intervenor] has adequately stated an interest in this suit based on potential indemnity to Defendant").

Despite this persuasive authority, plaintiff goes on to argue against defendant Tug Hill's potential indemnity case and declares "[c]ourts around the Country (including this Court) have rejected employers' attempts to seek contractual contribution or indemnification for FLSA claims." [Doc. 24 at 17]. This argument is misplaced.

First, plaintiff cites to ***Gustafson v. Bell Atlantic***, 171 F.Supp. 2d 311 (S.D. N.Y. 2001). In ***Gustafson***, the district court, relying on ***Herman v. RSR Security Services***, 172 F.3d 132, 143 (2d Cir. 1999), held that even in a joint employment situation, a claim for contractual indemnification under the FLSA is "still absent." ***Id.*** at 328. However, in ***Herman***, the Second Circuit held only that no common law right to indemnification or contribution exists under the FLSA absent a contract. ***Herman***, 172 F.3d at 144. Here, a contract exists giving rise to the indemnification claim and defendant Tug Hill is not claiming a common law right.

Notably, plaintiff's citations to Fourth Circuit precedence fair no better for his argument. In *Lyle v. Food Lion*, 954 F.3d 984 (4th Cir. 1992), defendant Food Lion filed a third-party complaint against its own employee on the grounds that he breached his contract with defendant Food Lion and his fiduciary duty to the company by himself violating and allowing plaintiff Lyle to violate company policy while under supervision. *Id*. Essentially, defendant Food Lion sought to indemnify itself for its own violation of the FLSA by shifting the blame to its employee, which is distinguishable from the allegations here.

Similarly, *McDougal v. G & S Tobacco Dealers, L.L.C.*, 712 F.Supp.2d 488 (N.D. W.Va. 2010) (Kaull, M.J.) is not persuasive. In *McDougal*, the issue before the court was whether the prior employer owed a duty to the successor employer to defend against FLSA claims made concerning wages paid before the business changed hands. Ultimately, the court in *McDougal* granted the successor employer's motion for summary judgment, finding that the original employer owed a duty of indemnity for FLSA claims prior to the sale of the business. *Id.* at 500–01.

Plaintiff's recitation of *McDougal* comes from an earlier part of the decision where the court determined the original employer was not liable to indemnify damages after the date of closing. In any event, this Court is not persuaded by *McDougal* because RUSCO does not need to try its case to support intervention.

Accordingly, this Court finds that RUSCO's potential liability in this matter weighs in favor of intervention by right.

### 3.    RUSCO's Interest Will Be Impaired Absent intervention.

As identified, a nonparty seeking intervention as of right must establish that the instant lawsuit could potentially impair its interests. Having found that the litigation affects RUSCO's interests (namely, its business model, interest in arbitration, and potential liability), RUSCO clearly satisfies this prong in favor of intervention by right.

### 4.    Defendant Tug Hill cannot adequately represent RUSCO's interests.

Having found at least three potential interests in this matter, this Court too finds that Defendant Tug Hill cannot adequately represent RUSCO's interests in the event this Court were to disallow intervention by right. Plaintiff argues that allowing RUSCO to intervene would effectively render the "adequate representation" element of the prerequisite threshold to intervene superfluous. [Doc. 24 at 20]. Plaintiff further states that defendant Tug Hill and RUSCO's interests are fundamentally aligned. [Id.]. This Court cannot agree.

As articulated by RUSCO, a finding of liability against defendant Tug Hill alone would implicate RUSCO in several ways. For example, if plaintiff were to establish liability, RUSCO could be required to indemnify defendant Tug Hill on plaintiff's substantive claims. Further, if plaintiff were to succeed on his substantive claims against defendant Tug Hill, plaintiff could theoretically pursue RUSCO for damages as a joint employer. In this circumstance, plaintiff would undoubtedly make every attempt to leverage findings of fact *in this litigation* in the hypothetical RUSCO litigation, even though RUSCO would not have had an opportunity to contest those facts here. Moreover, if plaintiff is ultimately unsuccessful in this litigation against Tug Hill absent RUSCO as a party, plaintiff could theoretically pursue virtually the

same claims against RUSCO in a second stage of litigation. Additionally, and as a practical matter, discovery in this matter would necessarily require disclosure of facts and circumstances surround the signing of the independent contractor agreement between plaintiff and RUSCO, the terms of the agreement, the negotiations and/or discussions between the parties, and evidence of the parties' intent. It would also require the disclosure of the hours work by plaintiff and the fee remitted to him, both of which are matters known exclusively to RUSCO.

Based on the foregoing, this Court finds that RUSCO is entitled to intervention as a matter of right pursuant to Fed. R. Civ. Pro. 24(a).

### B. Even assuming *arguendo* that intervention by right is improper, RUSCO would be entitled to permissive intervention.

The parties agree that in order to permissibly intervene, a non-party must timely show either that it has a conditional right to intervene by a federal statute, or that it has a claim or defense that shares a common question of law or fact with the main action. *See* Fed. R. Civ. Pro. 24(b). In exercising its discretion to permit a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Pro. 24(b)(3). "[A] challenge to the court's discretionary decision to deny leave to intervene must demonstrate a *clear* abuse of discretion in denying the motion." ***N. Carolina State Conf. of NAACP v. Berger***, 999 F.3d 915, 938 (4th Cir. 2021) (quoting ***McHenry v. Comm'r***, 677 F.3d 214, 219 (4th Cir. 2012)).

Here, RUSCO does not claim it has a conditional right to intervene by federal statute. *See* [Doc. 15-1 at 15–16]. Instead, RUSCO's timely motion asserts, correctly, that

intervention in this matter will not prejudice either party, and that the matter involves common questions of fact and law–namely, whether plaintiff is an independent contractor under the FLSA. Plaintiff and Rusco have a written contractual agreement on this very issue, and finds on that question could potentially subject RUSCO to liability as either a joint employer or indemnitor. Accordingly, and in addition to intervention by right, RUSCO is entitled to permissive intervention.

## II.    Defendant Tug Hill's Motion to Dismiss

Defendant Tug Hill asserts this matter should be dismissed based on Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). This Court will examine each basis for dismissal in turn.

### A.    Dismissal pursuant to Fed. R. 12(b)(1) is warranted because plaintiff entered into a valid and enforceable arbitration agreement covering the claims at issue in this case.

Defendant Tug Hill begins its argument by asserting that plaintiff voluntarily agreed to pursue any disputes in arbitration arising out of his relationship with RUSCO or the work performed for the benefit of defendant Tug Hill. [Doc. 22 at 12–13]. Plaintiff counters by asserting that plaintiff never agreed to arbitrate his claims against defendant Tug Hill when he entered into the subject agreement with RUSCO concerning arbitration. [Doc. 31 at 6–7]. Moreover, plaintiff contends that the language in RUSCO's arbitration agree does not confer upon defendant Tug Hill the right to compel arbitration. [Id. at 7].

#### 1.    Arbitration in the Fourth Circuit

This Court notes that arbitration, for better or worse, is highly favored by federal courts. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Motions to compel

24

arbitration . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir. 1997) (citations omitted).  Unless the "scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life. Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The "liberal federal policy favoring arbitration agreements" applies equally in the employment context. *Cf. Shadahan v. Macy's Corp. Servs., LLC*, 2021 WL 357055, at *2 (N.D. W.Va. Sept. 21, 2021) (Groh, C.J.).

Courts in the Fourth Circuit look to see if the party seeking to compel arbitration can satisfy each of the following four factors: (1) whether there is a dispute between the parties; (2) whether there exists a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidence by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute. *Id.*, at *2[3].  When a court considers these factors, it must be "mindful of the 'clear federal directive in support of arbitration.'" *See Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001).

---

[3]This Order does not address the first and fourth factor, as the satisfaction of these considerations is evidenced by the simple fact that plaintiff has filed a complaint against defendant Tug Hill.

### 2.    The Claims at Issue

Plaintiff's agreement to arbitrate with RUSCO expressly states that "every dispute arising in connection with these Terms will be resolved by binding arbitration. . . . This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms. . . ."  *See* [Doc. 15-6].

Courts have found the use of these key phrases—"every dispute" and "arising out of"—evidences the parties' intent to give their arbitration clause an expansive reach.  *See* ***Polyflow, LLC v. Specialty RTP, LLC*** 993 F.3d 295, 303–04 (5th Cir. 2021) (finding that "arising out of" demonstrated that the arbitration clause had expansive reach); ***Altenhofen v. Southern Star Central Gas Pipeline, Inc.***, 2020 WL 6877575, at *6 (W.D. Ky. Nov. 23, 2020) (finding that an agreement to arbitrate "all claims that have arisen or will arise out of Employee's employment with or termination from [his employer]" encompassed FLSA claims that were later prused not against the employer but against its customer); ***Snow v. Silver Creek Midstream Holdings, LLC***, 467 F.Supp.3d 1168, 1170 (D. Wyo. 2020) (same).

Here, without entering into the independent contractor agreement, which expressly incorporates the terms of service including the arbitration provision, plaintiff would not have performed work on defendant Tug Hill's projects through RUSCO.  This agreement not only services as the condition precedent to work with customers, like defendant Tug Hill, who contract with RUSCO; it also defines all of the parties' respective commitments, rights, and obligations related to the performance of that work.  For example, with regard to his classification, the agreement provides: "[RUSCO] and you intend for you to provide services to [defendant Tug Hill] strictly as an independent professional and not as an employee, worker,

26

agent, joint venture, partner, or franchisee of [RUSCO] or [Tug Hill]." *See* [Doc. 15-4]. With regard to his compensation for services rendered, "[t]he fee charged to [defendant Tug Hill] on your behalf shall be the fee described in the Project Details unless you and [defendant Tug Hill] notify [RUSCO] in writing prior to the completion of the Project that you and [defendant Tug Hill] have negotiated a different fee. . . . [RUSCO's] role in the payment process is solely limited to payment processing and transmission between you and [defendant Tug Hill]. [Id.]. Plaintiff even agreed to indemnify defendant Tug Hill if a court were to find that he was–as he now alleges–an employee. [Id.]. Most notably, the terms of service provided a mechanism to resolve disputes over these commitments, rights, and obligations–plaintiff agreed that every dispute arising in connection with these terms would be resolved by binding arbitration.

According to the Supreme Court of the United States, even if there is ambiguity as to the scope of the arbitration provision, the ambiguity must be resolved in favor of arbitration. *See* **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24–25 (1983) (explaining that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including questions about the "construction of the contract language itself").

Here, plaintiff's claim arises out of work performed through RUSCO on defendant Tug Hill's projects. Plaintiff's agreement to the aforementioned terms, including the arbitration provision, was a precondition to the performance of work on defendant Tug Hill's projects. Thus, the claims that relate or refer to the work that plaintiff performed or the terms under which he agreed to perform such work are subject to arbitration.

### 3. Interstate Commerce

The arbitration agreement here also evidences a transaction involving interstate commerce. The Supreme Court of the United States has broadly interpreted the Federal Arbitration Act's requirement that, to fall within its purview, a contract must "evidence a transaction involving commerce." 9 U.S.C. § 2. "The word 'involving,' the Supreme Court said, is indeed the functional equivalent of 'affecting.'" *See* ***King v. IBEX Glob.***, 2015 WL 6159492 (S.D. W.Va. Oct. 20, 2015) (Goodwin, J.) (citing ***Allied-Bruce Terminix Cos. v. Dobson***, 513 U.S. 265, 274 (1995)). Congress thus intended to "provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." ***Perry v. Thomas***, 482 U.S. 483, 490 (1987).

Here, plaintiff has indisputably alleged a link to interstate commerce by averring that he worked for defendant Tug Hill in Marshall and Wetzel Counties in West Virginia, that defendant Tug Hill is a "Texas company," and that plaintiff was engaged in commerce or in the production of goods for commerce. Here, it would seem, that defendant Tug Hill has clearly satisfied the aforementioned factors to warrant compelled arbitration.

### B. Plaintiff's valid and enforceable arbitration agreement delegates threshold questions of arbitrability to the arbitrator.

The Supreme Court of the United States instructs that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." ***Henry Schein, Inc. v. Archer and White Sales, Inc.***, 139 S.Ct. 524, 530 (2019). This is so even in extreme cases where "the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

28

Here, the arbitration provision found in the terms of service contains an express delegation clause, stating "[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding agreement." [Doc. 15-6]. This Court declines to usurp the parties' delegation of authority in this respect.

In support of this conclusion, this Court finds the opinion of Judge Volk highly persuasive. "Our Court of Appeals and a majority of its colleague tribunals have held that the incorporation of the American Arbitration Association Rules or similar" constitutes the "clear and unmistakable" evidence required to conclude that the parties agreed to have an arbitrator decide issues of arbitrability. *Brown v. Equitrans Midstream Corp.*, 2020 WL 7409533, at *7 (S.D. W.Va. Dec. 17, 2020) (Volk, J.) (citations omitted). According to Judge Volk, a clause providing that the arbitration panel "shall have exclusive authority to resolve disputes of any kind or nature, including enforcement of this Arbitration Agreement" is an "explicit directive reserving questions of arbitrability to the arbitrator." *Id.* at 11.

Here, because the parties have expressly delegated threshold questions to the arbitrator, this Court is of the opinion to grant defendant Tug Hill's Motion to Dismiss and to compel arbitration.

### C.   Defendant Tug Hill does not need to be a signatory for the threshold question of arbitrability to be delegated.

In consideration of the arguments asserted by the parties and the respective authorities associated therewith, this Court finds that the fact defendant Tug Hill is not a signatory to the independent contractor agreement to be of no moment. "[T]he question of whether a purported nonsignatory can enforce an arbitration agreement concerns a question of

arbitrability and, thus, must be decided by the arbitrator." *Grabowski v. Platepass, LLC*, 2021 WL 1962379, at *4 (N.D. Ill. May 17, 2021) (citing *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); *Eckert/Wrodell Architects v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1110 (8th Cir. 2014)).

To be clear, numerous courts have had opportunity to consider whether a delegation clause applies to non-signatories.  In *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 137375, at *8–9 (W.D. Pa. July 31, 2020), *report and recommendation adopted*, 2020 WL 5702419 (Sept. 24, 2020), the court emphatically rejected the assertion to the contrary:

> This Court is unpersuaded by Plaintiff's arguments which would necessarily require the Court to do an end run around their agreements with [the inspection company] and deprive the [inspection company] of the benefit of its bargain. Instead of initially suing [the inspection company], Plaintiffs sue [the customer of the inspection company].  Plaintiff may only recover against [the customer] if they can show that it acted as the Plaintiffs' 'joint employer' under the FLSA and was responsible for [the inspection company]'s alleged failure to pay overtime.  Yet, Plaintiffs attempt to downplay their relationship with [the inspection company] in an apparent effort to avoid their agreement to arbitrate. In light of *Henry Schein* and the clear language of the Arbitration Agreement, whether [the customer] may enforce the Arbitration Agreement against Plaintiffs is a question for the arbitrator.

*See also* *Doucet v. Boardwalk Pipelines, L.P.*, 2021 WL 3674975 (S.D. Tex. Mar. 18, 2021) (finding that the question of whether a non-signatory could enforce the arbitration

agreement was one of arbitrability which had been delegated to the arbitrator); *Altenhofen v. Energy Transfer Partners, LP*, 2020 WL 7336082, at \*1 (W.D. Pa. Dec. 14, 2020) (holding, in FLSA case where plaintiffs sued non-signatory client of their employer: "[w]hether [client defendant] may enforce the agreements, as a non-signatory, is a question reserved for arbitration," and that "Plaintiffs cannot avoid their arbitration agreements by omitting claims against CIS, CEM-TIR or any like 'staffing' company"); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F.Supp. 3d 1168, 1170 (D. Wyo. 2020) (holding that the worker's arbitration agreement "as a matter of law . . . covers [the worker's] claim against [defendant]," even though defendant was a non-signatory, because the claim arose out of his employment).

In determining that defendant Tug Hill can enforce the independent contractor agreement and the arbitration provision therein, this Court is required to examine state law contract principles.[4] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hightower v. GMRI, Inc.,* 272 F.3d 239, 242 (4th Cir. 2001); *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001).

Here, the independent contractor agreement does not contain a choice of law or venue provision. Accordingly, this Court must determine which law applies to the contract enforcement question, just as it would if this Court's jurisdiction was based on diversity of citizenship. Since the case was filed in federal court in West Virginia, West Virginia's choice

---

[4]Courts should "apply ordinary state law principles that govern the formation of contracts . . . and the federal substantive law of arbitrability." *Int'l Paper Co. V. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). In other words, federal substantive law applies to questions of arbitrability, while state law governs questions of contract formation.

of law principles for contracts dictate which state law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), *superseded by statute on other grounds.*

The Supreme Court of Appeals of West Virginia states that in contract cases: "[o]ur traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occurred in the same state." *Joy v. Chessie Employees Fed. Credit Union*, 186 W.Va. 118, 411 S.E.2d 261 (1991). The rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend West Virginia's public policy. *Id*.

Here, plaintiff electronically signed the arbitration agreement and subsequently performed work in West Virginia. When the subject dispute emerged, he sought relief in federal court in West Virginia. Therefore, West Virginia law should govern whether defendant Tug Hill, a non-signatory, can enforce the arbitration agreement.

### 1. Defendant Tug Hill is a third-party beneficiary to the underlying agreement.

Third-party beneficiaries have standing to recover under a contract clearly intended for their benefit. West Virginia law provides that if a "covenant or promise be made for the sole benefit of a person with whom it is not made . . . such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise." W.Va. Code § 55-8-12. *See Ohio Cty. Dev. Auth. v. Pederson & Pederson, Inc.*, 2010 WL 391616 (N.D. W.Va. Jan. 26, 2010) (Stamp, J.) (refusing to dismiss on standing grounds

32

where it was alleged that the defendant contractor would provide services and materials to another contractor for the benefit of plaintiff-owner). Even if a contract is not made specifically for the benefit of a non-party, the non-party may enforce it where the surrounding circumstances suggest that there was no other reason for the contract to have been made. *Hatfield v. Wilson*, 2012 WL 2888686, at *3 (S.D. W.Va. July 13, 2012) (Chambers, J.).

Furthermore, the contract does not need to be made only for the benefit of the third-party beneficiary; rather, a party may be a third-party beneficiary to a contract if the contract was made and intended to be for the benefit of a class of persons definitely and clearly shown to come within the terms of the contract and the third-party beneficiary party is a member of that class. *Slone v. State Auto Prop. & Cas. Ins. Co.*, 2021 WL 190938 (S.D. W.Va. Jan. 19, 2021) (Copenhaver, J.) (finding that a provision in an insurance contract allowing for recovery of medical expenses in the event of injury on property owner's premises benefitted the non-policy holding guest injured on the property).[5]

Here, the independent contractor agreement demonstrates an intent to make defendant Tug Hill a third-party beneficiary.[6]   The very first sentence in the independent

---

[5]The parties, as well as RUSCO, are engaged in a quibble as to whether West Virginia law or Texas law should apply on this point. While this Court has found that West Virginia law governs, the same result would be reached in the event this Court were to apply Texas law. *See First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (finding where the signatories intended to secure a benefit to a third party and entered into a contract for the third party's benefit, the third party may enforce the agreement as a third-party beneficiary).

[6]This Court finds plaintiff's reliance on *Hiser v. Nzone Guidance, LLC*, 799 F.App'x 247 (5th Cir. 2020) in an attempt to refute this finding to be unpursuasive. Notably, that case is distinguishable because RUSCO did not attempt to intervene and the client there, Nzone Guidance, LLC, raised different arguents–most notably, the issue of arbitrability was not even before the court.

33

contractor agreement establishes as much.  "This Agreement . . . constitutes a binding agreement . . . to provide freelance services to third party companies (each a 'Company' or collectively the 'Companies')" with whom RUSCO contracted.  [Doc. 15-4].  Moreover, defendant Tug Hill is provided numerous rights and benefits by virtue of the agreement, which only defendant Tug Hill could enforce, including work performance, indemnification rights, and rights related to confidentiality.  [Id.].

Because the independent contractor agreement provides specific—and significant—benefits to defendant Tug Hill, it is a third-party beneficiary under West Virginia law.  Accordingly, defendant Tug Hill should be permitted to enforce plaintiff's agreement to resolve "every dispute" arising out of his work on defendant Tug Hill projects, through RUSCO, in binding arbitration.[7] [8]

## **CONCLUSION**

For the foregoing reasons, the Motion to Intervene [**Doc. 15**] is **GRANTED**.  The Clerk is instructed to note RUSCO Operating, LLC as a defendant party in this matter.  Additionally, defendant Tug Hill Operating, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), and (7) [**Doc. 21**] is **GRANTED**.  Accordingly,

---

[7]Defendant Tug Hill also raises the argument that the doctrine of estoppel prevents plaintiff from circumventing his obligation to arbitrate wage and hour claims.  *See* [Doc. 22 at 24].  Having found arbitration required and appropriate on the other grounds addressed herein, this Court need not evaluate the propriety of this argument.

[8]Defendant Tug Hill argues that the above-captioned matter should be subject to dismissal for plaintiff's failure to join an indispensable party pursuant to Fed. R. Civ. Pro. 12(b)(7).  Having granted RUSCO's Motion to Intervene, this argument is moot.

this matter is hereby **DISMISSED**, and the parties are hereby **COMPELLED TO ARBITRATION** for resolution of the subject claims.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record in this matter.

**DATED**: April 12, 2022.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**